UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CHRISTINA M. MERRITT,**

           Plaintiff,

     v.                                                    1:01-CV-1487 (HGM/RFT)

**TERRANCE E. DUNLAP, JAMES LYMAN,
BENEDICT RAVIDA, JAMES DECAPRIO,
LENNIE DANIELS, GREG SAGER,
KIM KLUCK, and THE UNITED STATES OF AMERICA**

           Defendants.
_____

**APPEARANCES:**                           **OF COUNSEL:**

SCIOCCHETTI, PARISI & SACCOCIO, PLLC    L. JOHN VAN NORDEN, ESQ.
Attorneys for Plaintiff
670 Franklin Street
Schenectady, New York 12207-2924

HONORABLE GLENN T. SUDDABY          JAMES C. WOODS
UNITED STATES ATTORNEY FOR THE      Assistant United States Attorney
NORTHERN DISTRICT OF NEW YORK
Attorney for Defendants
James T. Foley United States Courthouse
445 Broadway, Room 218
Albany, New York 12207

**HOWARD G. MUNSON**
**Senior United States District Judge**

## MEMORANDUM - DECISION AND ORDER

      Plaintiff, Christina M. Merritt, brings this <u>Bivens</u>-styled action against seven law enforcement agents for alleged violations of her constitutional rights.[1] Plaintiff sets forth claims for:

---

[1] <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1970) (finding a cause of action under the Fourth Amendment, the Supreme Court held that plaintiff was entitled to recover money damages for injuries suffered as a result of the agents' violation

(1) unlawful seizure/false arrest pursuant to the Fourth Amendment to the United States Constitution, *see* Dkt. No. 1, Compl. at ¶ 42; and (2) malicious prosecution pursuant to the Fourth Amendment, *see* id. at ¶ 46. Plaintiff alleges, *inter alia*, that defendants, Special Agent Terrance E. Dunlap, Detective James Lyman, Detective Benedict J. Ravida, Detective James DiCaprio, Senior Investigator Lennie Daniels, Detective Greg Sager, and Special Agent Kluck arrested her without probable cause and with malice and/or reckless disregard for her rights by causing and/or continuing a malicious prosecution against her. Plaintiff also sets forth claims for false arrest and malicious prosecution under the Federal Tort Claims Act ("FTCA") against the United States of America. *See* id. at ¶¶ 49-51. Defendants move for dismissal or summary judgment of plaintiff's claims asserting that they acted within the scope of their proper authority, had probable cause to arrest plaintiff, and enjoy qualified immunity. Similarly, defendants move for dismissal or summary judgment of plaintiff's FTCA claims asserting that she has failed to state a prima facie claim for either false arrest or malicious prosecution because the defendants had probable cause to effect her arrest. Plaintiff opposes defendants' motion. For the reasons set forth below, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

In September of 1999, based on information provided to them by a confidential source, the Catskill Police Department and the Capital District Drug Enforcement Task Force ("CDDETF") (collectively "Task Force") began an investigation into the distribution of narcotics and crack cocaine by Michael and Jeffrey Chowka. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 1. Sager is a member of the Catskill Police Department and the other remaining individual

---

of the Fourth Amendment).

defendants are members of the CDDETF. *See* Dkt. No. 27, Defs.' Mem. of Law at 2. With information obtained during the investigation, the Task Force sought arrest warrants for both Michael and Jeffrey Chowka as well as search warrants for their respective residences. On September 29, 1999, the Honorable Ralph W. Smith, United States Magistrate Judge issued arrest and search warrants with respect to both Michael and Jeffrey Chowka. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 2. At approximately 7:00 A.M. on September 30, 1999, while maintaining surveillance of Jeffrey Chowka's residence, Lyman and Ravida observed Jeffrey Chowka and a white female, later identified as plaintiff, leave Jeffrey Chowka's residence at RR 1 Box 34, Bobs Lane Road, Athens, New York. *See* id. at ¶ 3. Lyman radioed Jeffrey Chowka's movement to Dunlap, DiCaprio, and Sager who followed Jeffrey Chowka and plaintiff to a convenience store where they apprehended him. *See* id. at ¶ 4. The Task Force advised Jeffrey Chowka that a United States Magistrate had issued a Federal Arrest Warrant for him and a Federal Search Warrant for his residence at RR1 Box 34, Bobs Lane Road, Athens, New York. *See* id. at ¶ 5.

The Task Force escorted Jeffrey Chowka, accompanied by plaintiff, back to his residence, where he was read his Miranda rights, and the Task Force explained the import of the Federal Search Warrant to all those present at the residence, including plaintiff, Jeffrey Chowka, Jeffrey Chowka's mother, Joan Chowka, and Joan Chowka's boyfriend, Charles Ribokas, who was defendants' confidential source. *See* id. at ¶ 6; Dkt. No. 27, Defs.' Mem. of Law, Ex. 1, at 10. Thereafter, while Dunlap and Sager sequestered plaintiff, Jeffrey Chowka, Joan Chowka and Ribokas in the kitchen, Lyman, Ravida and DiCaprio conducted a search of the premises where they discovered crack cocaine in Jeffrey Chowka's upstairs bedroom in a top dresser-drawer. *See* id. at ¶ 7. Defendants

also submit that the top drawer contained several articles of female specific clothing/undergarments, but plaintiff contests the assertion. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 7; Dkt. No. 31, Pl.'s Statement of Material Facts at ¶ 7. DiCaprio and Ravida also noted several other articles of female clothing and personal effects throughout Jeffrey Chowka's room, including shoes, jewelry, lingerie, feminine T-shirts, perfume and bracelets. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 8. Based on these observations, the Task Force inferred that a female had stayed in Jeffrey Chowka's bedroom; the parties; however, dispute how often plaintiff spent the night. *See* id.; Dkt.No. 31, Pl.'s Statement of Material Facts at ¶¶ 8, 9 ("ongoing" versus "intermittent" or "occasional" basis). Plaintiff concedes that she stayed overnight at Jeffrey Chowka's residence on occasion, but she disputes that her occasional overnight visits amount to sharing Jeffrey Chowka's bedroom. *See* Dkt. No. 29, Merritt Aff. at ¶ 4. She also concedes that she kept certain personal belongings at Jeffrey Chowka's residence; however, she disputes defendants' contention that she kept any belongings in the top drawer of the dresser located in Jeffrey Chowka's upstairs bedroom. She instead maintains that she kept her belongings in the two lower drawers of Jeffrey Chowka's dresser in his upstairs bedroom while she kept the remainder of her belongings in a closet.[2] *See* id. at ¶ 5. Task Force members also seized several other items related to Michael and Jeffrey Chowka's drug trafficking from Jeffrey Chowka's upstairs bedroom. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 10.

Just prior to her arrest, Task Force members began to interrogate plaintiff, and Jeff Chowka

---

[2]Although she does not specifically indicate the location of the closet in her opposition papers, from the context of her statement, the court can infer with reasonable certainty that the closet plaintiff references was located in Jeffrey Chowka's upstairs bedroom.

admonished her to keep quiet. Thereafter, plaintiff refused to answer any further questions posed to her by Task Force members. *See* Dkt. No. 29, Merritt Aff. at ¶ 6; Dkt. No. 30, Pl.'s Mem. of Law at 4. Contemporaneously, the Task Force contacted the Assistant United States Attorney ("AUSA") assigned to the Chowka case, and informed him that they found cocaine and crack cocaine in a top dresser-drawer containing numerous female-specific clothing items. The AUSA then "authorized" the arrest of plaintiff, and the Task Force placed her into custody and transported her to the United States Courthouse in Albany for pre-trial services processing. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 11. Pursuant to Rule 5 of the Federal Rules of Criminal Procedure pertaining to a warrantless arrest, on September 30, 1999, Magistrate Judge Smith witnessed Dunlap sign the criminal complaint against plaintiff. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 12. The United States filed a criminal complaint against plaintiff charging her with possession with intent to distribute crack cocaine. *See* Dkt. No. 27, Ex. 7, Crim. Compl. After her arrest, plaintiff remained in custody for four days at which time her attorney secured her release. *See* Dkt. No. 29, Merritt Aff. at ¶ 6. On November 19, 1999, the Government dismissed all of the charges it filed against plaintiff due to insufficient evidence. *See* id. at ¶ 8; Ex. B.

After her release, plaintiff obtained the contents of the top dresser drawer from which the defendants claimed to have removed a quantity of cocaine, and she transferred the contents to her attorney. *See* id. at ¶ 7. A photograph of the contents reveals, *inter alia*, the following: two screwdrivers, a Norelco electric razor, a bottle of calcium tablets, Mineral Ice rub, glasses, three rolls of photographic film, skin lotion, a wrist watch, and adhesive tape. Noticeably absent from the

photograph are any items of female clothing or female effects.[3]

# DISCUSSION

## I.     Motion to Dismiss Standard

When matters outside the pleadings are presented in connection with a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must, with the exception of certain narrowly-defined materials, either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and afford all parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED.R.CIV. P. 12(b); *see also* Friedl v. City of New York, 210 F. 3d 79, 83 (2d Cir. 2000).  The Second Circuit strictly enforces "the conversion requirement of Rule 12(b)(6) where there is a legitimate possibility that the district court relied on inappropriate material in granting the motion." Amaker v. Weiner, 179 F. 3d 48, 50 (2d Cir. 1999). The conversion requirement's purpose is to ensure that "courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions." Amaker, 179 F. 3d at 50.

It appears to the court that defendants drafted their motion as one seeking summary judgment and that plaintiff tailored her opposition to defeat a motion for summary judgment. Accordingly, the court will analyze defendants' motion as one seeking summary judgment.

## II.    Summary Judgment Standard

The standard for summary judgment is familiar and well-settled.  Rule 56 allows for

---

[3]Defendants do not concede that there were no items of female clothing in Jeffrey Chowka's top dresser-drawer.

summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L. Ed. 2d 265 (1991) (quoting FED.R.CIV.P. 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. See Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. See Thompson, 896 at 720; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. See, e.g., Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223-24 (2d Cir.1994); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir.1987). The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact. To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving

party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See* Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511.

**III.    Defendants Ulisis DelGado, Andrew Peterson, Matthew White, Kim Kluck, and Lennie Daniels**

As a preliminary matter, defendants have advised that on May 17, 2002, the parties agreed by stipulation to dismiss defendants Ulisis DelGado, Andrew Peterson, and Matthew White from the complaint. *See* Dkt. No. 17, Voluntary Dismissal. Defendants have also advised that plaintiff has not yet served defendant Special Agent Kim Kluck in this action. Rule 4(m) of the Federal Rules of Civil Procedure states in relevant part: "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified period of time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Plaintiff filed her complaint on September 28, 2001, and she did not effect service as to Kluck within the 120 day time limit. Therefore, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the court dismisses defendant Kluck.

Additionally, plaintiff has advised that defendant Lennie Daniels apparently had no role in her arrest or subsequent prosecution and therefore requests that he be dismissed from this action. *See* Dkt. No. 29, Merritt Aff. at ¶ 9. Defendants have no objection.[4] The court, therefore, dismisses

---

[4] Defendants similarly assert that Daniels was neither involved with the search of Jeffrey Chowka's residence nor with the subsequent arrest of plaintiff. *See* Dkt. No. 28, Defs.' Statement of Material Facts at ¶ 13. Daniels' deposition reveals that: he was not present when the Task Force arrested plaintiff; (2) Daniels did not participate, at any point

8

Lennie Daniels from this action.

**IV.   FTCA**

In her third cause of action, plaintiff asserts a claim against the United States pursuant to the FTCA alleging false arrest and malicious prosecution claims in violation of the Fourth Amendment. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Since '[s]overeign immunity is jurisdictional in nature,' the United States may only be sued with its consent." Dorking Genetics v. United States, 76 F.3d 1261, 1263 (2d Cir. 1996) (quoting FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). While the FTCA provides a limited waiver of the United States' sovereign immunity, this waiver does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," *see* 28 U.S.C. § 2680(h), *i.e.*, the federal government does not consent to suit for these torts or for claims arising out of these torts. Accordingly, plaintiff's FTCA claims against the Government for false arrest and malicious prosecution are barred by the doctrine of sovereign immunity. *See* Bernard v. United States, 25 F.3d 98, 104 (2d Cir.1994) ("[T]he FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors . . . .").

Within 28 U.S.C. § 2680(h), however, is an exception to the exception, which provides that the United States waives its sovereign immunity "with regard to acts or omissions of investigative

---

in time, in the execution of the search and arrest warrants at issue in this case; (3) on the day of plaintiff's arrest, his only involvement was as "backup supervisor"; and (4) on the day of plaintiff's arrest, his only appearance at Jeffrey Chowka's residence was to receive a consent search form for an additional location under surveillance at the same time. *See* Dkt. No. 27, Ex. 8 at 5-6.

or law enforcement officers[5] of the United States Government . . . [on] any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). Pursuant to 28 U.S.C. § 1346(b), such liability is to be determined "in accordance with the law of the place where the act or omission occurred." Because the alleged false arrest and malicious prosecution occurred in New York State, New York law applies. Therefore, the court's analysis of plaintiff's false arrest and malicious prosecution claims, *infra*, will apply with equal force as to plaintiff's claims against the Government pursuant to the FTCA.

## IV.   False Arrest

In her first cause of action, plaintiff states a claim for false arrest and unlawful seizure alleging that her arrest was unreasonable and without probable cause in violation of the Fourth Amendment and pursuant to Bivens. "Bivens actions are not significantly dissimilar to claims brought under . . .§ 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (citation omitted). "Because the two actions share the same 'practicalities of litigation,'" Burnett v. Grattan, 468 U.S. 42, 50, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36 (1984), federal courts have typically incorporated § 1983 law into Bivens actions." Tavarez, 54 F.3d at 110 (citing Carlson v. Green, 446 U.S. 14, 18-20, 100 S.Ct. 1468, 1471-72, 64 L.Ed.2d 15 (1980); Ayeni v. Mottola, 35 F.3d 680, 688 n. 10 (2d Cir.1994), *cert. denied*, 514 U.S. 1062, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995); Ellis v. Blum, 643 F.2d 68, 84 (2d Cir.1981)). A cause of action for false arrest can be brought either as a violation of state tort law or as a violation of § 1983 based on an unreasonable

---

[5]"Investigative or law enforcement officers" are defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

seizure under the Fourth Amendment. Analysis of the state and federal claims is identical. *See* Savino v. City of New York, 331 F.3d 63, 75 (2d Cir.2003). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause (citation omitted), is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, the elements of a false imprisonment [or false arrest] claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. Id. at 853 (citing Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314 (1975)). A favorable termination of the proceedings is not an element of this tort. Id. (internal citations and quotation marks omitted) (emphasis omitted).

Here, it is clear that defendants intended to confine plaintiff, that plaintiff was aware of her confinement, and that plaintiff did not consent to the confinement. Thus, plaintiff easily satisfies the first three elements. Police officers, however, are empowered to effect a warrantless arrest based on probable cause, and "the existence of probable cause to arrest . . . is a complete defense to an action for false arrest." Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir.2001). When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause. *See* Wu v. City of New York, 934 F.Supp. 581, 586 (S.D.N.Y.1996).

Probable cause to arrest is present when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

11

crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir.1999). In evaluating the probable cause determination, the court "consider[s] the facts available to the officer at the time of the arrest" and the conclusions those facts reasonably support. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir.1997) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir.1996)). Thus, although hunches are insufficient to sustain probable cause, United States v. Patrick, 899 F.2d 169, 174 (2d Cir. 1990), "a probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." Hahn v. County of Otsego, 820 F.Supp. 54, 55 (N.D.N.Y.1993); *see also* Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) Bernard v. United States, 25 F.3d 98, 102 (2d Cir.1994). In assessing the totality of the circumstances, courts must be aware that "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. Whren v. United States, 517 U.S. 806, 812-813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also* Clute v. Dunster, 1989 WL 78221, at *4 (N.D.N.Y. July 13, 1989) ("In other words, a valid arrest will not be rendered invalid by malicious motives" (citation omitted).). In addition, "the eventual disposition of the criminal charges is irrelevant to the probable cause determination." Hahn v. County of Otsego, 820 F.Supp. 54, 55 (N.D.N.Y. 1993). "Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

Here, the facts are largely undisputed. At the time of plaintiff's arrest, Task Force members had observed Jeffrey Chowka, the target of their investigation, and plaintiff leave his residence together and travel to a convenience store. Upon executing the search warrant for Jeffrey Chowka's residence, Task Force members discovered cocaine in the top dresser drawer in Jeffrey Chowka's bedroom, drug paraphernalia related to the Chowka's distribution activities, as well as several articles of feminine clothing and effects in Jeffrey Chowka's bedroom and at least the dresser's two bottom drawers.[6] Task Force members also attempted to interrogate plaintiff, but she declined to answer their questions after Jeffrey Chowka's admonishment. The court believes those facts constitute the "totality of the circumstances," which confronted the Task Force at the time of plaintiff's arrest. Based upon these circumstances, the court finds that defendants had sufficient knowledge to have made a probable cause determination and arrested plaintiff. Defendants' motion for summary judgment as to plaintiff's claim for false arrest is GRANTED.

## V.    Malicious Prosecution

In her second cause of action, plaintiff states a claim for malicious prosecution alleging that defendants caused her continued prosecution without probable cause and acted with malice and/or reckless disregard for her rights. The elements of malicious prosecution under § 1983 are "substantially the same" as the elements under New York law. Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir.1992). To establish a claim for malicious prosecution, plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice

---

[6]Clearly, the parties dispute whether the top dresser drawer contained female specific clothing and/or effects in addition to the cocaine.

13

as a motivation for defendant's actions." Russell v. Smith, 68 F.3d 33, 36 (2d Cir.1995); *see also* Posr v. Court Officer Shield # 207, 180 F. 3d 409, 417 (2d Cir. 1999).

    *A.    Initiation of Criminal Proceedings*

Defendants concede that they commenced criminal proceedings against plaintiff, and thus plaintiff has established the first element of her malicious prosecution claim.

    *B.    Malice*

To demonstrate malice, plaintiff need not prove that defendants were motivated by spite or hatred, although such proof would indeed satisfy the element. In this context, malice "means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975, 976 (1978)). "New York courts recognize that actual malice can rarely be established through direct evidence and thus may be proven though circumstantial evidence." Rounseville, 13 F.3d at 630-31 (citing Martin v. City of Albany, 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 614-15, 364 N.E.2d 1304, 1306-08 (1977)). In light of the circumstantial evidence present here–that the Task Force's arrest of plaintiff came on the heels of her refusal to answer their questions–it would not be unreasonable for a fact-finder to infer that the defendants acted with a wrong or improper motive. Summary judgment is not appropriate based upon this element.

    *C.    Termination of the Proceeding in Plaintiff's Favor*

While both parties recognize this element, they fail to analyze whether the proceedings in fact terminated in plaintiff's favor. The Second Circuit has held that a plaintiff "must alleg[e] and prov[e] that the prosecution terminated in some manner indicating that the person was not guilty of

the offense charged" in order to satisfy the favorable termination prong of the prima facie test for malicious prosecution. Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir.1980). "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused . . . only when its final disposition is such as to indicate the innocence of the accused." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997); (citing MacFawn v. Kresler, 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 486, 666 N.E.2d 1359 (1996) (explaining that a favorable termination happens "when the final disposition of the proceeding involves the merits and indicates the accused's innocence"); O'Brien v. Alexander, 101 F.3d 1479, 1486-87 (2d Cir.1996) (discussing cases); Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) ("In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence.")). Whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed "impl[ies] a lack of reasonable grounds for the prosecution." Murphy, 118 F.3d at 948 (citing Loeb v. Teitelbaum, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't 1980)).

Certain dismissals "that do not result from an adjudication of the merits have generally been held not sufficiently favorable to the accused to be indicative of innocence." Murphy, 118 F.3d at 948 (citing Heaney v. Purdy, 29 N.Y.2d 157, 159-60, 324 N.Y.S.2d 47, 49, 272 N.E.2d 550 (1971) (dismissals for lack of subject matter jurisdiction); MacFawn, 88 N.Y.2d at 860, 644 N.Y.S.2d at 487 (dismissals pursuant to N.Y. CRIM. PROC. § 170.30(1)(a) for failure to allege sufficient facts to support the charge). "Similarly, dismissals by the prosecution 'in the interests of justice' under N.Y. CRIM. PROC. § 170.40, are generally considered not to be dispositions in favor of the accused." Murphy, 118 F.3d at 949 (citing MacLeay v. Arden Hill Hospital, 164 A.D.2d 228, 230-31, 563

N.Y.S.2d 333, 334-35 (3d Dep't 1990); Miller v. Star, 123 A.D.2d 750, 751, 507 N.Y.S.2d 223, 224 (2d Dep't 1986); Hygh, 961 F.2d at 368 ("as a matter of law," a dismissal in the interests of justice "cannot provide the favorable termination required as the basis for a claim of malicious prosecution").

Here, the record indicates that the Government, pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, dismissed the complaint against plaintiff citing "insufficient evidence at this time." The court finds this type of dismissal analogous to dismissals pursuant to N.Y.CRIM. PROC. § 170.30(1)(a) for failure to allege sufficient facts to support the charge. The dismissal of plaintiff's complaint was not the result of an adjudication of the merits and the nature of the dismissal is not sufficiently favorable so as to indicate plaintiff's innocence. Therefore, the court cannot say that the criminal proceeding against plaintiff terminated in her favor and summary judgment is appropriate on this basis.

### D. *Probable Cause*

Even assuming plaintiff demonstrated that the proceedings terminated in her favor, as with her claim for false arrest, she must clear the probable cause hurdle because the existence of probable cause entitles defendants to summary judgment, *see* Broughton v. State, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87, 92-93, 335 N.E.2d 310 (1975). Because the "probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim," Mejia v. City of New York, 119 F.Supp.2d 232, 254 (E.D.N.Y.2000), the court considers the issue anew, if only briefly. The Second Circuit has clarified that in order for the probable cause that existed at the time of arrest to "dissipate" prior to commencement of prosecution, "the groundless nature of the charge must be made apparent [to the defendants] by the discovery of some intervening fact." *See* Kinzer

v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003) (quoting Lowth v. Town of Cheektowaga, 83 F.3d 563, 571 (2d Cir.1996)).

For purposes of malicious prosecution, probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of," Rounseville, 13 F.3d at 629, or whether "a discreet and prudent person would be led to the belief that a crime had been committed by the person charged." Loeb, 77 A.D.2d at 103, 432 N.Y.S.2d at 494-95. The existence of probable cause is measured as of the time the prosecution was initiated and is based on facts known to or believed to be true by the defendant at that time. *See* id. (citations omitted).

The court has already found that defendants had probable cause to arrest plaintiff, and the record reveals that no intervening fact emerged to dissipate the probable cause that existed at the arrest stage prior to the commencement of the prosecution. Thus, the court similarly finds that defendants had probable cause to commence a criminal prosecution. *See* Kinzer, 316 F.3d at 144. Because defendants had probable cause to institute the criminal proceedings against plaintiff, summary judgment is appropriate on this basis as well.

Therefore, defendants' summary judgment motion as to plaintiff's malicious prosecution claim is GRANTED.

**VI.   Qualified Immunity**

The court's probable cause finding as to plaintiff's false arrest and malicious prosecution claims also informs the court's decision as to whether the individual defendants are entitled to qualified immunity. Defendants assert that they are entitled to qualified immunity because they acted in good faith and in accordance with the law.

> [G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal citations and quotation marks omitted). The question is whether defendants' actions were "objectively reasonable" in light of the circumstances. Thomas v. Roach, 165 F.3d 137, 142-43 (2d Cir. 1999) (explaining that "qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated that established right"). The Supreme Court has held:

> The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." Id. at 206, 121 S.Ct. 2151. Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity. *See* Lennon v. Miller, 66 F.3d 416, 423 (2d Cir.1995) ("'[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable.'" (quoting

Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987)); *see also* Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause."); Saucier, 533 U.S. at 205, 121 S.Ct. at 2158 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.").

In the case at bar, given the facts and circumstances that confronted the individual defendants, the court finds their actions objectively reasonable and finds that officers of reasonable competence could certainly disagree on whether the probable cause test was met to arrest plaintiff. Therefore, the individual defendants are entitled to qualified immunity.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions, oral argument, and the applicable law, the court hereby

**DISMISSES** Lennie Daniels and Kim Kluck from the complaint;

**GRANTS** defendants' motion for summary judgment as to plaintiff's claims for false arrest and malicious prosecution and **DISMISSES** plaintiff's complaint in its entirety.

**IT IS SO ORDERED.**

Dated: December 30, 2005
Syracuse, New York

*/s/ Howard G. Munson*
Howard G. Munson
Senior U.S. District Judge